UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| MICHELE C. DAVIS, | Civil Action No.: 16-14470 |
| --- | --- |
| | Honorable Avern Cohn |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 18, 24]

Plaintiff Michelle C. Davis appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions,[1] referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that plaintiff has identified no reversible error, and thus **RECOMMENDS** that:

---

[1] Plaintiff also filed a reply brief in support of her motion for summary judgment. [ECF No. 26].

- the Commissioner's motion [ECF No. 24] be **GRANTED**;

- Davis's motion [ECF No. 18] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I.     **BACKGROUND**

A.     **Davis's Background and Disability Applications**

Born January 20, 1976, Davis was 35 years old at the time of her amended onset date of December 5, 2011. [ECF No. 15-3, Tr. 90; ECF No. 15-5, Tr. 233]. For DIB purposes, her date last insured was December 31, 2011. [ECF No. 15-2, Tr. 20]. Davis has a high school education, and is able to communicate in English. [*Id.*, Tr. 32]. She has prior work history as a nurse assistant, receptionist, cashier, bookkeeper, and bank teller. [*Id.*] She claimed to be disabled due to complex regional pain syndrome of the right foot and leg, obstructive sleep apnea, chronic migraines, high blood pressure, diverticulosis, chronic urinary tract infections, chronic nausea, and severe plantar warts on the left foot. [ECF No. 15-3, Tr. 90].

After the Commissioner initially denied her applications, Davis requested a hearing, which took place in May 2016, during which she and a vocational expert (VE) testified. [ECF No. 15-2, Tr. 41-89]. In a May 23, 2016, written decision, the ALJ found Davis to be not disabled prior to

March 23, 2014, but to be disabled after that date. [ECF No. 15-2, Tr. 16-40]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Davis timely filed for judicial review of the disfavorable portion of the ALJ's decision. [ECF No. 15-2, Tr. 1-4; ECF No. 1].

      **B.    The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

period of at least 12 months, no disability will be found.[3]  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Davis was not disabled prior to March 23, 2014.  At the first step, he found that Davis had not engaged in substantial gainful activity since her amended alleged onset date.  [ECF No. 15-2, Tr. 22].  At the second step, the ALJ found that since the amended alleged onset date, December 5, 2011, Davis had the severe impairments of obesity, migraines with photophobia, varicose veins, plantar

---

[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

warts, posttraumatic stress disorder, social anxiety disorder, and panic disorder with agoraphobia. [*Id.*] Next, the ALJ concluded that none of Davis's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 23].

Between the third and fourth steps, the ALJ found that prior to March 23, 2014, the date Davis became disabled, she had the RFC to perform sedentary work as defined by 20 C.F.R. 404.1567(a), and with the following additional limitations:

> She could lift no more than 10 pounds at a time and occasionally lift or carry articles such as docket files, ledgers, and small tools. She could sit for six hours in an eight-hour day and stand and walk for two hours in an eight-hour day. She could occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds. She could occasionally balance and stoop, but never kneel, crouch, or crawl. She was limited to simple, routine, and repetitive tasks. She could frequently interact with supervisors and coworkers, but only occasionally interact with the public.

[*Id.*, Tr. 25 ]. At step four, the ALJ found that Davis was unable to perform any past relevant work since her amended alleged onset date. [*Id.*, Tr. 32]. With the assistance of VE testimony, he determined at step five that prior to March 23, 2014, there were jobs that Davis could perform such as bench assembler, inserter, and sorter, and that those jobs existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 33-34].

5

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

For the period at issue (December 5, 2011 to March 23, 2014), Davis argues that the ALJ erred by not concluding that her limitations equaled Listing 11.03, by failing to account for limitations stemming from her frequent migraines even if Listing 11.03 was not equaled, by failing to account for her recurrent urinary tract infections (UTI), and by conducting an improper credibility analysis. These arguments are without merit, and the ALJ's decision should be affirmed.

**B.**

Davis first claims that the ALJ erred when he determined that her migraine headaches did not equal Listing 11.03, asserting that the ALJ failed to point to evidence that contradicted her claim regarding the frequency with which she experiences migraines.[4] "There is no listing that specifically addresses headaches or migraines. *See* 20 C.F.R., Pt. 404, Subpt. P, App.1. Listing § 11.03 is the most analogous listing for considering medical equivalence of migraine headaches." *Shepard v. Comm'r of Soc. Sec.*, No. 3:14-CV-25, 2015 WL 4554290, at *4 n. 3 (S.D. Ohio Mar. 24, 2015). The Commissioner argues that the ALJ reasonably relied upon State agency medical consultant Eric VanderHaagen, D.O.'s equivalency determination regarding Listing 11.03, and conducted an independent review of the listing to reasonably conclude that Davis's impairments did not meet or equal it. The Court agrees with the Commissioner.

Davis has the burden of proving that her impairment medically equals a listed impairment. *Preslar*, 14 F.3d at 1110 (claimant bears burden

---

[4] Though the ALJ's decision concludes that Davis did not meet or equal Listing 11.02 (convulsive epilepsy) and Listing 11.03 (non-convulsive epilepsy), Davis's argument on appeal only focuses on whether she meets or equals Listing 11.03. [ECF No. 18, PageID 1646-51].

during first four steps). She must show that her impairments meet *all* of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.* To satisfy her burden, Davis must offer medical findings equal to the severity of the requirements, and the findings must be supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 404.1526(b). At the same time, an ALJ's failure to sufficiently articulate his step three findings is error. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (ALJ erred by failing to analyze physical condition in relation to listed impairments, and the error was not harmless).

To medically equal Listing 11.03, Davis had to establish that her migraine headaches were:

> documented by detailed description of a typical [migraine headache], including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § Pt. 404, Subpt., App. 1, Listing 11.03. The ALJ provided robust analysis to explain why Davis failed to meet Listing 11.03 (together with Listing 11.02), and addressed each criteria:

8

> [T]he evidence does not establish seizure activity documented by detailed description of the typical seizure pattern including all associated phenomena, occurring more frequently than once a month in spite of at least 3 months of prescribed treatment with daytime episodes; or nocturnal episodes manifesting residuals which interfere significantly with activity during the day; or alteration of awareness or loss of consciousness and transient postictal manifestations or unconventional behavior or significant interference with activity during the day. While the medical evidence establishes the claimant has migraine headaches, they are not documented more frequently than once per month. The claimant sought occasional emergency room treatment and self-reported migraines occurring once per week, but the objective medical evidence does not establish this level of frequency.

[ECF No. 15-2, Tr. 23-24, citing ECF No. 15-7, Tr. 286-321; ECF No. 15-13, Tr. 1085-1309; ECF No. 15-14, Tr. 1310-1460]. Davis cannot argue that the ALJ failed to provide sufficient analysis of Listing 11.03.

Davis's argument challenging the ALJ's analysis rests entirely on her testimony and self-reports that she experienced migraine headaches more frequently than once a month. [ECF No. 18, PageID 1646-51]. She addresses none of the other criteria; she points to no evidence to refute the ALJ's findings regarding the lack of evidence of nocturnal episodes, alteration of awareness or loss of consciousness, transient postictal manifestations, unconventional behavior or significant interference with activity during the day. [*Id.*]. And her argument wrongly suggests that the ALJ carried the burden of providing evidence to refute her self-reports. She

9

asserts, "[T]he ALJ points to no contrary evidence to suggest a frequency of less than one time per month. He simply asserts that Plaintiff's reporting of migraine frequency should be disbelieved." [ECF No. 18, PageID 1647]. But Davis was the one who was required to support her claim that she met a listing with medically acceptable clinical and laboratory techniques. § 404.1526(b). She does not carry that burden.

Plaintiff also argues that "a State agency had reviewed the file but found insufficient evidence prior to the [date last insured] and thus, never considered an equivalency argument for the relevant period." [ECF No. 18, PageID 1650]. However, as noted by the Commissioner, the State agency medical consultant, Dr. VanderHaagen, considered the rest of the period as part of Davis's claim for supplemental security income.[5] [ECF No. 15-3, Tr. 106]. In September 2015, Dr. VanderHaagen determined that Davis retained the RFC to perform a range of sedentary exertional work with additional limitations. [*Id.*] Dr. VanderHaagen's signature on the Disability Determination and Transmittal Form establishes that he had considered the question of whether Davis met or equaled a listing. *See* SSR 96-6p; 1996

---

[5] Davis's claim for Title II disability insurance benefits extended to her date last insured of December 31, 2011. [ECF No. 15-2, Tr. 22]. After that date, her application was effective for Title XVI supplemental security income. The standard to determine disability for each type of benefit is identical.

10

WL 374180, at *3 ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given the question of medical equivalence at the initial and reconsideration levels of administrative review.").

Significantly, "no other medical expert opined that she met or medically equaled in severity Listing 11.03." *White v. Comm'r of Soc. Sec.*, No. 2:13-CV-934, 2015 WL 1197818, at *17 (S.D. Ohio Mar. 16, 2015). Since the plaintiff in *White* did not present sufficient evidence to demonstrate that she met or equaled Listing 11.03, the court found any error on the part of the ALJ at step three to be harmless. *Id.,* citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[E]ven if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment."). The same conclusion applies here.

## C.

Davis argues that even if Listing 11.03 is not met, the RFC does not properly account for her limitations stemming from her severe migraine

11

headaches. She says that the RFC fails to take into account that she experiences headaches one to two times per week with associated symptoms of nausea, vomiting, and photophobia. To the contrary, the ALJ acknowledged that Davis had severe migraines with accompanying photophobia that significantly limited her work abilities. [ECF No. 15-2, Tr. 22]. He noted that, in August 2011, Davis presented to the emergency room with a migraine headache with some photosensitivity, and that she was prescribed pain medications that were reportedly helpful. [*Id.*] In December 2011, Davis reported migraines with increased frequency, up to three times per week. [*Id.*, citing ECF No. 15-14, Tr. 1435]. Primary care physician Sarah Ruff, M.D. adjusted Davis's medications. [*Id.*, citing ECF No. 15-14, Tr. 1436]. In 2013, Dr. Elizabeth Mathew treated Davis for migraines reportedly occurring one to two times per week, with medication (Propranolol) reportedly helping to reduce the frequency. [*Id.*; citing ECF No. 15-14, Tr. 1359, 1361]. Then, in February 2014, Dr. Mathew noted Davis's migraine headaches were not well controlled, but they were "improving" on the Propranolol, so Dr. Mathew increased her dose of Propranolol. [*Id.*; citing Tr. 1350].

While Davis was diagnosed with migraine headaches after her amended onset date, the ALJ noted that the medical record did not reflect

12

any exacerbations requiring emergency room treatment between her amended onset date and March 23, 2014. [ECF No. 15-2, Tr. 28; citing ECF No. 15-9, Tr. 886; ECF No. 15-13, Tr. 1350, 1359, 1363, 1435, 1438]. And during the relevant time period, Davis reported that medications (Propranolol, Amerge) helped to reduce the frequency and duration of her migraine headaches. [*Id.*; ECF No. 15-13, Tr. 1350, 1359; ECF No. 15-2, Tr. 76-77]. The ALJ also relied on the fact that the record did not reflect any specialized psychiatric treatment since 2009, with generally unremarkable mental status examinations reported by Davis's primary care physicians. [*Id.*; citing ECF No. 15-7; ECF No. 15-9; ECF No. 15-13, Tr. 1405, 1411, 1415]. And the ALJ noted that Davis did not report any significant side-effects from any of her medications at the hearing. [*Id.*; ECF No. 15-2, Tr. 67].

The ALJ also relied in part on the opinions of State psychological consultant Bruce Douglass, Ph.D., who concluded that Davis was capable of performing simple work on a sustained basis. [ECF No. 15-2, Tr. 32, citing ECF No. 15-3, Tr. 108]. The ALJ later reasoned that, "The combination of all of the claimant's physical impairments also contributes to limiting her to only simple routine and repetitive tasks." [ECF No. 15-2, Tr. 27].

While Davis suggests that the ALJ did not factor reasonable limitations as a result of her migraines into the RFC, the limitation of simple, routine work with only occasional changes in the work setting, coupled with Davis's ability to control her migraines with medication, defeats her argument. *See, e.g., Jones v. Comm'r of Soc. Sec.*, No. 14-14417, 2016 WL 759439, at *1 (E.D. Mich. Feb. 26, 2016) (limitation to "simple, routine, repetitive tasks" reasonably accounted for migraines); *Hicks v. Comm'r of Soc. Sec.*, No. 14-14111, 2016 WL 2605234, at *12 (E.D. Mich. Feb. 17, 2016) (ALJ reasonably accounted for migraines with limitation to simple tasks in low-stress work environment); *Porter v. Comm'r of Soc. Sec.*, No. 13-10707, 2014 WL 1118419, *15 (E.D. Mich. Mar. 21, 2014) (limitation to "simple, unskilled, low stress work with only occasional changes in the work setting" reasonably accounted for migraines).

Davis also contends that the ALJ did not account for her frequent urinary tract infections (UTI), and that that error is further compounded because the ALJ failed to rely on any medical opinions in crafting the RFC. But the ALJ did account for Davis's UTIs, concluding, "Since the medical evidence does not establish that these impairments [including UTIs] more than minimally affected the claimant's ability to perform basic work functions for at least twelve consecutive months, I find them non-severe."

[ECF No. 15-2, Tr. 23]. The medical evidence confirms that Davis's UTIs were infrequent and did not limit her work functioning for any 12 month period as required by 20 CFR §§ 404.1509, 416 909 (a disabling impairment must last "a continuous period of 12 months" or be expected to result in death). Davis points to several instances in which she was diagnosed with UTI from 2010 to 2012, but none of the cited records indicate that Davis's UTI's caused significant work limitations, much less that such limitations lasted at least 12 months. [ECF No. 18, PageID 1641, citing ECF No. 15-9, Tr. 886, 896; ECF No. 15-14, Tr. 1378, 1385, 1399, 1413].[6]

Davis has not demonstrated that she required a more restrictive RFC during the time period at issue.[7]

---

[6] The Court found no mention of UTIs on one of Davis's cited pages, and another referred to frequent UTIs, but showed that imaging of her abdomen was unremarkable. [ECF No. 15-14, Tr. 1333, 1548].

[7] In one sentence, Davis also attempts to argue that the ALJ pointed to no corroborating evidence when considering her varicose veins, ongoing problem with plantar warts, and her obesity; however, Davis's lack of development results in waiver of these thread-bare arguments. *McPhereson v. Kelsey,* 125 F.3d 989, 995 (6th Cir.1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks and citation omitted). This Court has no obligation to scour the record on Davis's behalf. *Karger v. Comm'r of Soc. Sec.,* 414 F. App'x 739, 754 (6th Cir. 2011).

**D.**

Davis finally argues that the ALJ improperly assessed her credibility. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of her credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers,* 486 F.3d at 248.

Davis claims that the ALJ's selective review regarding the evidence concerning her varicose veins led to an improper credibility finding. She suggests that the ALJ merely considered her gait in assessing her varicose veins, but the ALJ offered a more comprehensive assessment, finding that "the medical evidence does not demonstrate significant physical examination abnormalities despite the presence of varicose veins and warts," and that "the records do not indicate any abnormalities in the

16

claimant's gait prior to March 23, 2014." [ECF No. 15-2, Tr. 28]. The ALJ noted that, with respect to her varicose veins, "the record does not reflect the claimant required treatment for this condition on a regular basis, with only one episode of exacerbating pain reported." [*Id*.]. Davis has not identified any evidence to rebut the ALJ's description of the record, and the ALJ was within his right to consider Davis's conservative treatment. *Bentley v. Comm'r of Soc. Sec.,* 23 F. App'x 434, 435-436 (6th Cir. 2001) (ALJ properly considered conservative nature of treatment, among other factors, in plaintiff not entirely credible).

Finally, for the reasons already stated, the Court rejects Davis's argument that the ALJ did not adequately consider the subjective evidence of her migraines when assessing her credibility. The Court finds no good reason to disturb the ALJ's credibility determination.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 24] be **GRANTED**; that Davis's motion [ECF No. 18] be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

Dated: November 16, 2017

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

17

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 16, 2017.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager